1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

PEDRO TOMAS PEREZ PEREZ,

CASE NO. C17-0249JLR

11

Plaintiff,

12

v.

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT

13

ALEJANDRO N. MAYORKAS, et
al.,

14

15

Defendants.

16

## I.   INTRODUCTION

17

This matter comes before the court on remand from the Ninth Circuit Court of

18

Appeals.  *See Perez Perez v. Wolf*, 943 F.3d 853 (9th Cir. 2019); (Mandate of USCA

19

(Dkt. # 37).)  Before the court are cross-motions for summary judgment by Plaintiff

20

Pedro Tomas Perez Perez and Defendants Alejandro N. Mayorkas,[1] Tracy Renaud, Ron

21

22

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Alejandro N. Mayorkas became
Secretary of Homeland Security on February 2, 2021, and is therefore substituted for former
Secretary Elaine A. Duke.  Likewise, Tracy Renaud is now Acting Director of United States

Rosenberg, and Laura B. Zuchowski (collectively, "the Government").  (Pl. MSJ (Dkt. # 17); Def. MSJ (Dkt. # 24); *see also* Pl. Reply (Dkt. # 27); Def. Reply (Dkt. # 30).) After reversal and remand, both parties filed supplemental briefs.  (Pl. Suppl. Br. (Dkt. # 48); Def. Suppl. Br. (Dkt. # 47); *see also* Pl. Suppl. Resp. (Dkt. # 50); Def. Suppl. Resp. (Dkt. # 49).)  The court has considered the parties' submissions in favor of and in opposition to the motions, the administrative record (Administrative Record (Dkt. # 14) ("AR")), and the applicable law.  Being fully advised,[2] the court DENIES Mr. Perez's motion for summary judgment and GRANTS the Government's motion for summary judgment.

## II.    BACKGROUND

The court reviews the legal framework for U-visas that is applicable here before summarizing the factual and procedural background of the instant action.

### A.    Legal Framework for U-Visas

In 2000, Congress created the U nonimmigrant status to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute [certain crimes] . . . committed against aliens, while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States."  Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Pub. L. No. 106-386, § 1513(a), 114 Stat.

---

Citizenship and Immigration Services ("USCIS"), and is therefore substituted for former Acting Director James McCament.

[2] Neither party requests oral argument (Pl. Suppl. Br. at 1; Def. Suppl. Br. at 1), and the court concludes that oral argument would not be helpful to its disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1533-37.  To be eligible for a U-visa, a petitioner must meet several criteria:  (1) the

petitioner has suffered "substantial physical or mental abuse" resulting from being a

victim of a qualifying criminal activity; (2) the petitioner "possesses information

concerning" the qualifying criminal activity; (3) the petitioner "has been helpful, is being

helpful, or is likely to be helpful" to law enforcement authorities "investigating or

prosecuting" the qualifying criminal activity; and (4) the qualifying criminal activity

violating the laws of the United States occurred in the United States.  8 U.S.C.

§ 1101(a)(15)(U)(i); 8 C.F.R. § 214.14(b).  A qualifying criminal activity under the

statute includes, in relevant part, "felonious assault"; a criminal activity "involving"

felonious assault; "or any similar activity in violation of Federal, State, or local criminal

law."  8 U.S.C. § 1101(a)(15)(U)(iii); 8 C.F.R. § 214.14(a)(9).  In the U-visa petition, the

petitioner must include a Form I-918, Supplement B ("the certification"), which is:

> [A] certification from a Federal, State, or local law enforcement official,
> prosecutor, judge, or other Federal, State, or local authority investigating
> criminal activity described in section 1101(a)(15)(U)(iii) of this title . . . .
> This certification shall state that the alien "has been helpful, is being helpful,
> or is likely to be helpful" in the investigation or prosecution of criminal
> activity described in section 1101(a)(15)(U)(iii) of this title.

8 U.S.C. § 1184(p)(1); *see also* 8 C.F.R. § 214.14(c)(2)(i).  Under the regulations,

"[i]nvestigation or prosecution refers to the detection or investigation of a qualifying

crime or criminal activity."  8 C.F.R. § 214.14(a)(5).

USCIS is the agency responsible for determining and adjudicating U-visa

eligibility.  *See id.* § 214.14(c); *see generally* 72 Fed. Reg. 53,014 (Sept. 14, 2017).

"USCIS has sole jurisdiction over all petitions for U nonimmigrant status."  8 U.S.C.

§ 214.14(c)(1).  In addition, "USCIS will determine, in its sole discretion, the evidentiary value" of the evidence submitted with a U-visa application.  *Id.* § 214.14(c)(4).

**B.  Factual Background**

Mr. Perez is a citizen of Mexico who resides in Lynwood, Washington.  (Compl. (Dkt. # 1) ¶ 5.)  Mr. Perez alleges that he was the victim of harassment from August 2009 to October 2011.  (*Id.* ¶ 11; AR at 111.)  Mr. Perez reported the harassment to the Renton Police Department on January 10, 2012.  (AR at 110-11.)  The basis for that harassment claim is that, in August 2009, Mr. Perez loaned Concepcion Reyes $20,000, to be paid back with interest.  (*Id.* at 111.)  Then, on January 25, 2011, Mr. Perez loaned Luis Ulrich $30,000, also to be paid back with interest.  (*Id.*; *see also id.* at 132-37.)  In March 2011, Mr. Perez started asking the two men to pay him back.  (*Id.* at 111.)  In response, in March and October 2011, Mr. Ulrich "threatened to place [Mr.] Perez in [j]ail if he ke[pt] asking for his money back."  (*Id.*)  In early January 2012, Mr. Perez moved from Lynwood to Renton because he was afraid of Mr. Ulrich.  (*Id.*)  On January 8, 2012, Mr. Ulrich contacted Mr. Perez by phone, again telling Mr. Perez that "he was going to put [Mr.] Perez in jail."  (*Id.*)  Mr. Ulrich also told Mr. Perez that "he would make him disappear."  (*Id.*)  The Renton Police Department cited Mr. Perez's complaint under RCW 9A.46.020 for "Harassment" but ultimately determined that the allegations "were not defined enough . . . to file harassment charges against [Mr.] Ulrich."  (*Id.* at 110-11.)  The Renton Police Department was also unable to contact Ms. Reyes or Mr. Ulrich.  *Id.* at 111. The case report ended with the police noting, "[t]his report was generated for informational purposes only."  (*Id.*)  In addition to the police report, on January 13, 2012,

1 | Mr. Perez petitioned for anti-harassment orders against Ms. Reyes and Mr. Ulrich. (*See*
2 | *id.* at 112-30.) The petitions were unsuccessful because neither party could be served.
3 | (*See id.* at 128-30; Def. MSJ at 7.)

4 | On July 10, 2013, Mr. Perez submitted his U-visa petition to USCIS. (Compl.
5 | ¶¶ 1, 15; AR at 76-83, 167.) In addition to the main U-visa form—a Form I-918 Petition
6 | (AR at 76-83)—Mr. Perez sent USCIS other documents, including a certification dated
7 | January 10, 2013 (*id.* at 84-86), a cover letter from Mr. Perez's attorney (*id.* at 94-98),
8 | and records from the Renton Police Department (*id.* at 110-11) and the King County
9 | District Court (*id.* at 112-30).

10 | On March 25, 2014, USCIS requested additional evidence from Mr. Perez, noting
11 | that the harassment referenced in Mr. Perez's application is not a qualifying crime under
12 | the U-visa regulations, "nor does the evidence provided with [Mr. Perez's] filing include
13 | sufficient information to indicate that the noted criminal activity is similar to those
14 | crimes." (*Id.* at 74-75.) Mr. Perez submitted additional evidence on June 18, 2014. (*Id.*
15 | at 165-74.) In his response, Mr. Perez acknowledged that harassment is not a qualifying
16 | crime. (*Id.* at 168.) He argued, however, that he was the victim of "harassment activity
17 | [that] involved and/or was similar to extortion and stalking" and that the harassment
18 | activity "involved and/or was similar to felonious assault, an enumerated criminal
19 | activity, because it involved a threat to kill him." (*Id.* at 168.) On January 30, 2015,
20 | USCIS denied Mr. Perez's U-visa petition, finding that Mr. Perez and the evidentiary
21 | record failed to demonstrate that his crime of harassment is similar to a qualifying
22 | criminal activity. (*Id.* at 71-73.)

1        On February 25, 2015, Mr. Perez appealed to the USCIS Administrative Appeals

2   Office ("AAO").  (*Id.* at 35-66.)  Mr. Perez dropped his extortion and stalking arguments

3   on appeal, focusing exclusively on the claim that he was the victim of criminal activity

4   involving or similar to felonious assault.  (*See id.* at 45-46.)  The thread of his argument

5   is that although the Renton Police Department qualified Mr. Perez as the victim of

6   general harassment, the crime was actually felony harassment, which involves or is

7   substantially similar to felony assault, which is in turn a qualifying crime under the U-

8   visa regulations.  (*See id.* at 45-46, 110-11.)  Mr. Perez also submitted a new certification

9   (*id.* at 39-41), which he argued demonstrated "that the criminal activity of Harassment

10  was *DETECTED* by the Renton Police Department" (*id.* at 44 (emphasis in original)).

11       On September 25, 2015, the AAO dismissed the appeal because the harassment

12  that Mr. Perez suffered is not a qualifying crime under the U-visa regulations.  (*Id.* at 29-

13  34.)  To reach this conclusion, the AAO compared the elements of harassment under

14  Washington law to the statutorily enumerated list of qualifying criminal activities.  (*See*

15  *id.* at 33-34 (citing RCW § 9A.46.020; 8 U.S.C. § 1101(a)(15)(U)(iii)).)  It concluded that

16  harassment was insufficiently similar to be covered by the statute.  (*Id.*)  The AAO

17  acknowledged that Washington law also recognizes felony harassment, which involves

18  the perpetrator "threating to kill the person threatened or another person."  (*Id.* at 33

19  (citing § 9A.46.020(2)(b).)  But it found that there was "no evidence in the record that

20  felony harassment was the basis for the Form I-918[,] Supplement B."  (*Id.* at 34.)

21       On October 28, 2015, Mr. Perez filed a motion to reconsider with the AAO.  (*Id.*

22  at 10-27.)  Mr. Perez focused his motion on the idea that the Renton Police Department

1    "at least *detected* felony harassment," even if it did not further investigate or prosecute

2    the crime.  (*Id*. at 24 (emphasis in original).)  He then recycled his argument from the

3    previous proceedings that felony harassment involves or is substantially similar to the

4    qualifying crime of felony assault.  (*Id*. at 24-26.)

5         On May 9, 2016, the AAO denied Mr. Perez's motion.  (*Id*. at 3-8.)  Incorporating

6    its initial September 25, 2015, decision by reference, the AAO held that Mr. Perez "has

7    not demonstrated that he was a victim of qualifying criminal activity." (*See id*.)  The

8    AAO reiterated that the only criminal activity certified on the Form I-918, Supplement B,

9    was "harassment" and that this was not a qualifying criminal activity.  (*Id*. at 4-5.)  It also

10   noted that in filling out the form, the certifying official noted that the activity being

11   investigated was "harassment," that it was an "informational case," and that the threats to

12   Mr. Perez "were not defined enough . . . to file harassment charges." (*Id*. at 5.)  The

13   certifying officer submitted that "[t]here was no probable cause to believe a crime

14   occurred," and "[n]o criminal investigation and no criminal charges resulted." (*Id*.)  The

15   AAO acknowledged that the cited statute, RCW 9A.46.020, covers both gross

16   misdemeanor and felony harassment, but it concluded that the record "lack[ed] any

17   evidence that the certifying agency specifically detected or investigated felony

18   harassment." (*Id*.)  Thus, the AAO found that "a careful review of the record does not

19   establish that the certifying agency detected, investigated, or prosecuted felony

20   harassment or felonious assault committed against [Mr. Perez]." (*Id*. at 6.)

21        The AAO also concluded that, even if felony harassment had been detected, Mr.

22   Perez had not demonstrated that it was substantially similar to felonious assault.  (*Id*.)

1   The AAO found that felony harassment "involves communication of a threat to kill and

2   placing the threatened person in reasonable fear that the threat will be carried out through

3   words or conduct," but felony assault does not require a communication of a threat.  (*Id*.

4   (citing *State v. Mandanas*, 262 P.3d 522, 526-27 (Wash. Ct. App. 2011).)  It also noted

5   that felony harassment "does not require an added aggravating factor beyond the threat,

6   such as the use of a weapon or commission of the offense with the intention to commit a

7   felony."  (*Id*.)  Accordingly, the AAO found that even if the Mr. Perez demonstrated that

8   felony harassment was detected by the certifying agency, he had not demonstrated that it

9   was a qualifying crime under 8 U.S.C. § 1101(a)(15)(U)(iii)).  (*Id*. at 8.)

10  **C.     Initial Ruling and Appeal**

11          On February 17, 2017, Mr. Perez filed the present action.  (*See* Compl.)  Mr. Perez

12  then filed a motion for summary judgment, alleging the following legal errors:  (1) the

13  Government failed to consider all credible evidence in the administrative record showing

14  that the Renton Police Department "detected" felony harassment; (2) the Government

15  improperly considered irrelevant evidence and evidence outside the record; (3) the

16  Government failed to consider Mr. Perez's argument that the felony harassment he

17  suffered "involved" a qualifying crime; and (4) the Government misinterpreted state law.

18  (*See generally* MSJ.)  The Government filed a cross-motion for summary judgment,

19  claiming that the Government's administrative decision denying Mr. Perez's U-visa

20  petition is legally correct and supported by substantial evidence.  (*See* Def. MSJ at 1-2.)

21  The Government also argued that the court lacks subject matter jurisdiction over this

22

1  matter because USCIS's U-visa petition decisions are "discretionary and beyond judicial

2  review." (*See id.* at 14-16); 5 U.S.C. § 701(a)(2).

3      On December 26, 2017, this court denied Mr. Perez's motion for summary

4  judgment and granted the Government's cross-motion for summary judgment. (12/26/17

5  Order (Dkt. # 31).) The court found that there was "no judicially manageable standard by

6  which a court can judge how USCIS should exercise its discretion" and that USCIS had

7  sole jurisdiction over U-visa petitions and sole discretion to determine the evidentiary

8  value of petitioners' evidence when ruling on a petition. (*Id.* at 8.) Thus, the court

9  determined it lacked subject matter jurisdiction and dismissed Mr. Perez's administrative

10  appeal. (*Id.* at 9; Judgment (Dkt. # 33).) Mr. Perez appealed the court's ruling. (Not. of

11  Appeal (Dkt. # 34).)

12      On November 22, 2019, the Ninth Circuit reversed this court's decision and

13  remanded Mr. Perez's case. *Perez Perez*, 943 F.3d at 868. The Court held that 8 U.S.C.

14  § 1101(a)(15)(U) and 8 U.S.C. § 1184(p) provide meaningful standards by which to

15  review USCIS's denial of Mr. Perez's U-visa and that this court had subject matter

16  jurisdiction to review the agency's decision. *Id.* Specifically, the Ninth Circuit found

17  that there are meaningful standards for three principal claims raised by Mr. Perez under

18  the Administrative Procedure Act ("APA"). (*Id.* at 864-65.)

19      For Mr. Perez's claim that USCIS acted contrary to law by failing to consider all

20  credible evidence, the Court found that the standard of review "is whether USCIS acted

21  contrary to § 1184(p)(4) or in a manner that was 'arbitrary, capricious, an abuse of

22  discretion, or otherwise not in accordance with law.'" *Id.* at 864 (citing 5 U.S.C.

1    § 706(2)(A), (C).  For Mr. Perez's second claim—that USCIS's determination that

2    felony harassment does not constitute qualifying criminal activity is contrary to the plain

3    language of the statute—the Court found that there are meaningful standards, but "[t]he

4    standard of review on this is not entirely clear."  *Id.*  The Ninth Circuit "le[ft] it for the

5    district court to determine, in the first instance, the standard of review to apply on

6    remand, including whether *Chevron* or *Auer* deference is appropriate."  *Id*. at 865 (citing

7    *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984); *Auer*

8    *v. Robbins*, 519 U.S. 452, 461 (1997)).  Finally, the Ninth Circuit determined the

9    deferential substantial evidence test was the proper standard of review for Mr. Perez's

10   challenge to USCIS's factual finding that felony harassment was not detected by law

11   enforcement.  *Id.*

12        On remand, this court ordered the parties to file supplemental briefing to address,

13   at a minimum, the standard of review to apply to Mr. Perez's claim regarding UCSIC's

14   determination that felony harassment does not constitute qualifying criminal activity, as

15   well as any intervening supplemental authority issued after the court's vacated December

16   26, 2017, order.  (9/11/20 Order (Dkt. # 46) at 1-2.)  The court did not otherwise limit the

17   arguments the parties were permitted to make in their supplemental briefing.  (*Id*. at 2.)

18   The parties subsequently filed their supplemental briefing and responses.  (*See* Pl. Suppl.

19   Br.; Def. Suppl. Br.; Pl. Suppl. Resp.; Def. Suppl. Resp.)

20                              III.    ANALYSIS

21        The court begins by laying out the relevant legal standards for the parties'

22   cross-motions.  It then addresses Mr. Perez's arguments that USCIS improperly ignored

1    evidence in violation of the APA and erroneously determined that law enforcement did

2    not detect felony harassment or felonious assault.  Because the court finds that USCIS's

3    determination that felony harassment and felony assault were not detected complies with

4    the APA and is supported by substantial evidence, it does not reach the question of

5    whether felony harassment is substantially similar to felonious assault.

6    **A.**    **Legal Standards**

7         Mr. Perez bases his challenge to the Government's denial of his petition on the

8    APA.  (Compl. ¶¶ 2, 33-41.)  The APA provides that a federal court shall hold unlawful

9    and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or

10   otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or

11   limitations, or short by statutory right."  5 U.S.C. § 706(2)(A), (C).

12        Under § 706(2)(A)'s deferential standard of review, "[a]gency action should be

13   overturned only when the agency has 'relied on factors which Congress has not intended

14   it to consider, entirely failed to consider an important aspect of the problem, offered an

15   explanation for its decision that runs counter to the evidence before the agency, or is so

16   implausible that it could not be ascribed to a difference in view or the product of agency

17   expertise.'"  *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*,

18   265 F.3d 1028, 1034 (9th Cir. 2001) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm*

19   *Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

20        "When reviewing an agency's statutory interpretation under the APA's 'not in

21   accordance with law' standard, . . . [the court] adhere[s] to the familiar two-step test of

22   *Chevron*."  *Nw. Envtl. Advocs. v. U.S. E.P.A.*, 537 F.3d 1006, 1014 (9th Cir. 2008).

1    Under the first step, "if the intent of Congress is clear," the court "must give effect to the

2    unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.  However,

3    "'if the statute is silent or ambiguous with respect to the specific issue,' . . . we go to step

4    two, which considers 'whether the agency's answer is based on a permissible construction

5    of the statute.'" *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, 837 F.3d

6    1055, 1062 (9th Cir. 2016) (quoting *Chevron*, 467 U.S. at 843).  Courts also apply the

7    two-step *Chevron* test when assessing whether they must "set aside agency action" that is

8    "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"

9    under 5 U.S.C. § 706(2)(C).  *See Nw. Envtl. Advocs.*, 537 F.3d at 1014.

10          In applying these standards, the court's review is based on the administrative

11   record that was before the agency at the time of its decision.  *Asarco, Inc. v. U.S. Envtl.*

12   *Prot. Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980).  Summary judgment motions are the

13   appropriate mechanism by which the parties ask the court to decide whether, on the basis

14   of the administrative record, the agency action passes muster under the APA.  *Occidental*

15   *Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769-70 (9th Cir. 1985).  "[T]he function of the district

16   court is to determine whether or not as a matter of law the evidence in the administrative

17   record permitted the agency to make the decision it did."  *Id.* at 769.  Thus, the court does

18   not, as it would in ruling on a summary judgment motion in an original district court

19   proceeding, determine whether there is any genuine dispute of material fact.  *Good*

20   *Samaritan Hosp., Corvallis v. Mathews*, 609 F.2d 949, 951 (9th Cir. 1979).

21          Where the Government denies a visa petition on multiple grounds, each of which

22   is independently sufficient, a plaintiff will succeed on his challenge only by showing that

1  the Government abused its discretion with respect to all of the enumerated grounds.  *See*

2  *Spencer Enters., Inc. v. United States*, 229 F. Supp. 2d 1025, 1037 (E.D. Cal. 2001),

3  *aff'd*, 345 F.3d 683 (9th Cir. 2003).  Conversely, the Government need only show that it

4  had at least one valid ground for denial.  *See id.*

5  **B.    Evidence Considered by USCIS**

6        Mr. Perez's first argument is that the Government "completely ignored" portions

7  of the police report that stated the suspect had "threatened to 'make [Mr. Perez]

8  disappear'" and that Mr. Perez quit his job and moved out of fear that the suspect "might

9  do something to him" in violation of 8 U.S.C. § 1184(p)(4).  (Pl. MSJ at 6 (citing AR at

10 111).)  Mr. Perez also argues that USCIS improperly ignored evidence when evaluating

11 whether the criminal activity detected by the Renton Police Department "involved"

12 felonious assault.  (*Id.* at 5.)  The court address each of Mr. Perez's arguments in turn.

13       1.   Credible Evidence Under § 1184(p)(4)

14       The court must determine "whether USCIS acted contrary to § 1184(p)(4) or in a

15 manner that was 'arbitrary, capricious, an abuse of discretion, or otherwise not in

16 accordance with law.'"  *Perez Perez*, 943 F.3d at 864 (citing 5 U.S.C. § 706(2)(A), (C)).

17 8 U.S.C. § 1184(p)(4) states that, in reviewing a petition, the consular officer or the

18 Attorney General "shall consider any credible evidence relevant to the petition."  8

19 U.S.C. § 1184(p)(4).  The implementing regulation states, in relevant part, that:

20       The petitioner may submit any credible evidence relating to his or her Form
         I–918 for consideration by USCIS.  USCIS shall conduct a de novo review
21       of all evidence submitted in connection with Form I-918 and may investigate
         any aspect of the petition . . . .  USCIS will determine, in its sole discretion,
22       the evidentiary value of previously or concurrently submitted evidence,

including Form I-918, Supplement B, "U Nonimmigrant Status Certification."

8 C.F.R. § 214.14(c)(4).

The mandate to consider any credible evidence applies to the entirety of the petition. *See* 8 U.S.C. § 1184(p).  8 U.S.C. § 1101(a)(15)(U), in turn, lists four factors that must be met for a petition to be successful, including a finding that "the alien . . . has been helpful, is being helpful, or is likely to be helpful to . . . local authorities investigating or prosecuting [qualifying criminal activity.]"  *Id.*§ 1101(a)(15)(U)(iii); *see also* 8 C.F.R. 214.14(b)(3).  "Investigating or prosecuting" as used in the statute also refers to the local authorities "detecting" the criminal activity.  *See* 8 C.F.R. § 214.14.(a)(5).

Mr. Perez has failed to carry his burden of demonstrating that USCIS's denial did not comply with the APA on this issue.  The AAO's denial demonstrates that in evaluating whether local authorities were investigating, prosecuting, or detecting any criminal activity, let alone qualifying criminal activity, it considered the certification, the updated certification filed with Mr. Perez's appeal, and the underlying police report.  (*See* AR at 5 (referring to all three sources of evidence, including updated certification's statement that "[t]here was no probable cause to believe a crime occurred"); *see also id.* at 4 (incorporating September 15, 2015, Denial).)

Mr. Perez argues that the AAO violated its statutory duty to consider credible evidence by not explicitly considering Mr. Perez's petition for an anti-harassment order and his declaration, which included descriptions of threats.  (Pl. MSJ at 7; Pl. Suppl. Br.

1    at 12.)  In his argument, Mr. Perez makes much of the AAO's statement that its "factual

2    inquiry focuses only on whether the Form I-918[,] Supplement B and accompanying

3    reports establish that the certifying agency investigated a qualifying crime."  (*See* Pl.

4    Suppl. Br. at 11-13 (quoting AR at 5).)  But read in context, the AAO was explaining the

5    focus of its analysis in determining whether qualifying criminal activity "was in fact

6    detected by the certifying agency."  (AR at 5.)  The question the AAO was resolving is a

7    sub-part of one of four factors in the agency's analysis of Mr. Perez's petition.  *See* 8

8    U.S.C. § 1101(a)(15)(U)(i)-(iv).  Mr. Perez fails to make clear how his unsuccessful

9    petition for an anti-harassment order or his U-Visa declaration bear on whether the

10   Renton Police Department actually detected qualifying criminal activity.  (*See generally*

11   Pl. Suppl. Br.)

12        Furthermore, the substance of the evidence that Mr. Perez claims was ignored—

13   alleged threats against his life—was contained in the documents that were explicitly

14   considered in this portion of the AAO's analysis.  (*See* AR at 26 (AAO noting that "[t]he

15   Case Report also indicates that, '[t]he threats to place [Petitioner] in jail and to make him

16   disappear were not defined enough for [the reporting police officer] to file harassment

17   charges . . . .'"); Pl. Suppl. Br. at 12 (admitting that police report and anti-harassment

18   petition reference same alleged threat toward Mr. Perez).)  Additionally, as Mr. Perez

19   acknowledges, the certification form, which Mr. Perez admits was considered, discusses

20   Mr. Perez's unsuccessful attempt to get a temporary restraining order.  (Pl. Suppl. Br. at

21   12; AR at 86.)

22

1    In sum, the record indicates that the AAO's statements regarding focusing on the

2    certification forms and the police report were limited to the question of actual detection

3    by local law enforcement, and there is no indication that the threats against Mr. Perez

4    were not considered in USCIS's overall analysis.  Mr. Perez has not demonstrated that

5    USCIS ignored credible evidence in violation of § 1184(p)(4) or in a manner that was

6    "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

7    *See* 5 U.S.C. § 706(2)(A).

8        2.   Qualifying Criminal Activity Under § 101(15)(U)(iii)

9    Mr. Perez also argues that the evidence considered by the AAO was improperly

10   narrow because the statute defines qualifying criminal activity as "involving one or more

11   of the following or any similar activity . . . ."  (Pl. Suppl. Br. at 4 (quoting 8 U.S.C.

12   § 101(15)(U)(iii) (italics and underlining removed)).)  According to Mr. Perez,

13   § 101(15)(U)(iii) creates "two separate avenues" for petitioners to demonstrate they are

14   the victim of qualifying criminal activity:  "(1) criminal activity *involving* the enumerated

15   qualifying crimes; or (2) any 'similar activity.'"  (Pl. Suppl. MSJ at 4 (quoting 8 U.S.C.

16   § 101(15)(U)(iii)).)

17   //

18   //

19   //

20   //

21   //

22   //

ORDER - 16

1    At the outset, it is important to note what Mr. Perez is not challenging.  He does

2  not challenge 8 C.F.R. § 214.14(b)(3),[3] 8 C.F.R. § 214.14(c)(2)(i),[4] or the Government's

3  interpretation of these regulations to mandate that the certifying agency actually detected

4  the qualifying criminal activity in question.  (*See generally* Pl. MSJ; Pl. Suppl. Br.; Pl.

5  Suppl. Resp.)  Instead, Mr. Perez argues that there is a regulatory gap regarding the word

6  "involving" in  § 101(15)(U)(iii).  (Pl. Suppl. Br. at 5.)  He then interprets this term such

7  that, "under the 'involved' analysis," it does not matter what crime the certifying agency

8  detected, only what underlying conduct was perpetrated against the petitioner.  (Pl. Suppl.

9  Resp. at 6.)  Mr. Perez cites no authority directly in support of his "two avenues" reading

10  of § 101(15)(U)(iii) or his contention that there is "no specific regulation pertaining to

11  'involving' in the context of the qualifying criminal activity for the U Visa . . . ."  (*See* Pl.

12  Suppl. Br. at 4-5.)

13    The Government responds that there is a regulation directly on point which

14  interprets "involving" and states that:

15    "[Q]ualifying criminal activity includes one or more of the following or any
16    similar activities in violation of Federal, State or local criminal law of the
    United States:  [enumerated list of crimes].  The term "any similar activity"
17    refers to criminal offenses in which the nature and elements of the offenses
    are  substantially  similar  to  the  statutorily  enumerated  list  of  criminal
18    activities.

19    [3] This regulation requires that the petitioner demonstrate that "[t]he alien has been
    helpful, is being helpful, or is likely to be helpful to a certifying agency in the investigation or
20  prosecution of the qualifying criminal activity upon which his or her petition is based."  8 C.F.R.
    § 214.14(b)(3).

21    [4] This regulation requires that the certification state that "the applicant has been a victim
    of qualifying criminal activity that the certifying official's agency is investigating or prosecuting
22  . . . ."  8 C.F.R. § 214.14(c)(2)(i).

8 C.F.R. § 214.14(a)(9); Def. Suppl. Resp. at 4.)  The Government submits that this regulation "clarifies the statute by interpreting 'involving' to mean 'including' the enumerated criminal activities 'or any similar activities.'"  (Def. Suppl. Resp. at 4.)  As such, Mr. Perez's attempts to interpret the language of the statute without addressing the regulation are improper.  (*See id*.)

The court agrees with the Government.  Mr. Perez reads the statute too broadly and the regulation too narrowly in an apparent attempt to avoid engaging with the deference the court must give the agency's regulation.  But despite his argument otherwise, there is a regulatory framework in place that addresses how USCIS interprets "involving" in the statute.  Mr. Perez does not challenge the propriety of 8 C.F.R. § 214.14(a)(9), only whether it applies to the term "involving" in the statute.  (Pl. Suppl. Resp. at 5 (conceding 8 C.F.R. § 214.14(a)(9) is entitled to *Chevron* deference).)  The court finds that 8 C.F.R. § 214.14(a)(9) as applied to the term "involving" withstands scrutiny under *Chevron*.[5]  "Involving" is an ambiguous term in the statute that has several definitions.  *See Involve*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/involve (last visited April. 21, 2021) (listing at least six definitions including "to engage as a participant," "to oblige to take part," and "to surround as if with wrapping").  Thus, applying step one of *Chevron*, the court finds the statute is "ambiguous with respect to the specific issue" at hand.  *See United Cook Inlet*

---

[5] Mr. Perez conceded that 8 C.F.R. § 214.14.(a)(9) is entitled to *Chevron* deference.  (*See* Pl. Suppl. Resp. at 5.)

1    *Drift Ass'n*, 837 F.3d at 1062.  Proceeding to step two of the analysis, "including" is a

2    reasonable and permissible interpretation of this ambiguous term.  *See Involve*,

3    Merriam-Webster.com, https://www.merriam-webster.com/dictionary/involve (listing "to

4    have within or as part of itself : INCLUDE" as one definition); *Involve*, Oxford English

5    Dictionary, https://www.oed.com/view/Entry/99206 (last visited April 21, 2021) (listing

6    "to include; to contain . . ." as a definition).  Under the interpretation of "involving"

7    adopted by the regulation, USCIS places significant weight on the experience of local law

8    enforcement agencies when determining what crimes have been detected.  (Def. Suppl.

9    Resp. at 5.)  8 C.F.R. § 214.14(a)(9)'s interpretation of "involved" demonstrates that Mr.

10   Perez's argument that there is a regulatory gap are without merit, and the AAO properly

11   analyzed whether the Renton Police Department actually detected qualifying criminal

12   activity.

13        Mr. Perez also contends that USCIS's determination of whether qualifying

14   criminal activity was detected is inconsistent with the agency's own guidance and

15   previous actions.  (Pl. Suppl. Br. at 5, 10.)  But neither the interim rule nor the AAO

16   decisions cited by Mr. Perez demonstrate any inconsistent with the AAO's actions in this

17   case.

18        First, Mr. Perez points to a hypothetical in USCIS's interim rule regarding

19   eligibility for U-Visas.  (Pl. Suppl. Br. at 5 (citing New Classifications for Victims of

20   Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,013, 53,018

21   (Sept 17. 2007)) ("U-Visa Interim Rule").)  The rule describes a situation where a federal

22   agency investigating federal embezzlement charges discovers qualifying criminal

ORDER - 19

1  activity—domestic violence—that is not charged.  *See* U-Visa Interim Rule at 53,018.

2  Even with no charges, the hypothetical instructs that discovery of the qualifying crime

3  provides eligibility.  According to Mr. Perez, this demonstrates the agency must examine

4  the underlying record to determine whether any "crime detected by law enforcement fits

5  within one of the enumerated qualifying crime categories."  (Pl. Suppl. Br. at 5.)

6      But in the hypothetical presented by the rule, the certifying officials do not bring

7  charges for the domestic violence only because there are no applicable federal domestic

8  violence laws.  U-Visa Interim Rule at 53,018.  Thus, while the certifying law

9  enforcement agency did not bring domestic violence charges against the perpetrator, it

10  still detected the qualifying criminal activity.  *See id*.  It merely did not charge anyone

11  with the qualifying criminal activity because it lacked jurisdiction to do so.  *Id*.  Here,

12  unlike the hypothetical, the AAO determined that no detection occurred.  (*See* AR at 6.)

13      Mr. Perez's examples of allegedly inconsistent AAO decisions are equally

14  unavailing.  (*See* Pl. Suppl. Br. at 10 (citing *id.*, Ex. 1 ("*Matter of E-O-L-P*" and "*Matter*

15  *of M-R-B-C*")).)  Mr. Perez argues that the AAO in these decisions determined that

16  qualifying criminal activity was detected even though the crime that was actually charged

17  was a non-qualifying crime.  (*Id*.)   However, in *Matter of E-O-L-P*, the AAO determined

18  that felonious assault was detected based on a certification form where the certifying

19  official "indicated that the Petitioner was a victim of criminal activity involving, or

20  similar to, felonious assault."  (*Id*., Ex. 1 at 20.)  Similarly, in *Matter of M-R-B-C*, "the

21  certifying agency indicated that the Petitioner was a victim of criminal activity involving

22  or similar to 'Felonious Assault,' 'Related crimes,' and 'Attempt to commit any of the

1    named crimes.'" (*Id.* at 24.)  In Mr. Perez's petition, the certifying agency submitted that

2    this was an "informational case," the threats to petitioner "were not defined enough . . . to

3    file harassment charges," "[t]here was no probable cause to believe a crime occurred,"

4    and "[n]o criminal investigation and no criminal charges resulted." (*Id.* at 5.)  This is

5    easily distinguishable from the certification forms described in Mr. Perez's cited

6    decisions which indicated qualifying criminal activity had occurred, but merely labeled

7    the criminal activity as something else.  Thus, neither AAO decision cited by Mr. Perez

8    demonstrates an inconsistency with the agency's actions regarding Mr. Perez's petition.

9         At base, Mr. Perez's arguments that the AAO improperly failed to consider

10   evidence is premised on the argument that if the AAO had given due weight to his

11   favored evidence, it could not have ruled against Mr. Perez.  But an alleged failure to

12   give evidence due weight is a far cry from an alleged failure to consider evidence

13   altogether.[6]  The record does not indicate that the AAO did not consider credible

14   evidence on the question of whether the Renton Police Department detected qualifying

15   criminal activity.  (*See* AR at 3, 26.)  As such, the AAO's choice of evidence to consider

16   was consistent with the mandate of § 1184(p)(4) and not conducted in a manner that was

17   "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

18   *See* 5 U.S.C. § 706(2)(A), (C)).  Thus, to the extent that Mr. Perez's motion for summary

19   judgment is based on these arguments, it is DENIED.

20

21

22        [6] The court analyzes Mr. Perez's argument regarding USCIS's weighing of evidence under the substantial evidence test. *See infra* § III.C.

1    **C.     Agency Finding of No Detection**

2         Mr. Perez also contends that USCIS's factual finding that felony harassment and

3    felonious assault were not detected by the Renton Police Department is erroneous.  (Pl.

4    Suppl. Br. at 13).  For this issue, the court reviews the agency's denial using the

5    substantial evidence standard.  *See Perez Perez*, 943 F.3d at 865.  Under this deferential

6    standard, the court must determine whether the agency's action was based on "such

7    relevant evidence as a reasonable mind might accept as adequate to support a

8    conclusion."  *Id.* (citing *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1072 (9th Cir. 2015)).

9    "Review for substantial evidence is generally confined to a review of the administrative

10   record, which in this case includes [Mr.] Perez's U visa petition packet and the agency's

11   decisions denying [Mr.] Perez's petition."  *Id.*  In administrative review, the court may

12   not reverse a decision because another result is also reasonable or even if the court itself

13   would decide the issue differently.  *See Dep't of H.H.S. v. Chater,* 163 F.3d 1129, 1134

14   (9th Cir.1998).

15        USCIS's denial was based on substantial evidence.  The AAO's determination that

16   the Renton Police Department did not detect qualifying criminal activity is supported by

17   numerous portions of the administrative record.  The police report noted that the

18   described threats against Mr. Perez were not defined enough for harassment charges to be

19   filed.  (AR at 111.)  The temporary restraining orders sought by Mr. Perez were

20   dismissed.  (*Id.* at 86.)  When asked to "describe the criminal activity being investigated

21   and/or prosecuted," the certifying official state that "[t]his was an informational case and

22   no charges were filed.  Description was harassment 9A.46.020 as noted by the officer."

1    (*Id.* at 84.)  In the updated certification form submitted with his appeal, the certifying

2    official described the potentially qualifying criminal activity as follows:  "There was no

3    probable cause to believe a crime occurred.  No criminal investigation and no criminal

4    charges resulted from this report."  (*Id.* at 40.)

5          Mr. Perez points to evidence of threats against him in the record that could be

6    construed as threats against his life to support his argument that "the record compels the

7    conclusion that the agency at least detected felony harassment."  (Pl. Suppl. Br. (citing

8    AR at 11, 117).)  But the task of this court is not to determine whether the agency's

9    finding that there was no qualifying criminal activity was correct, only whether it was

10   supported by substantial evidence.  Based on the administrative record, the AAO's

11   conclusion that "the record does not establish that the certifying agency detected,

12   investigated, or prosecuted felony harassment or felonious assault committed against the

13   [Mr. Perez]" is supported by substantial evidence.  (*See* AR at 5.)  The court finds that, as

14   a matter of law, the record supports the agency's finding that neither felony harassment

15   nor felony assault was detected.

16   **D.      The Court Does Not Reach the Question of Substantial Similarity**

17         Mr. Perez argues that felony harassment is substantially similar to felonious

18   assault and thus is a qualifying criminal activity.  (Pl. MSJ at 9-11; Pl. Suppl. Br. at

19   14-15.)  However, this argument is only relevant if the agency determines that felony

20   harassment was detected by the Renton Police Department.  Thus, having determined that

21   the agency did not err in finding that neither felony harassment nor felony assault were

22

1   detected by the Renton Police Department, the court does not reach this question.  *See*

2   *Spencer Enters.*, 229 F. Supp. 2d at 1037.

3                       **IV.    CONCLUSION**

4         Based on the foregoing analysis, the court DENIES Mr. Perez's motion for

5   summary judgment (Dkt. # 17) and GRANTS the Government's motion for summary

6   judgment (Dkt. # 24).  The Clerk shall enter judgment in favor of the Government.

7         Dated this 21st day of April, 2021.

8

9

10                       JAMES L. ROBART
                           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 24